UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

KEVIN MARTIN,

                    Petitioner,

  v.                                          Civil Action No.
                                              9:08-CV-863 (GLS)

SUPERINTENDENT,

                    Respondent.

─────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PETITIONER:

KEVIN MARTIN, 00-A-2027
Petitioner *pro se*
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118

FOR RESPONDENT:

HON. ANDREW M. CUOMO                  THOMAS B. LITSKY, ESQ.
Office of the Attorney General        Ass't Attorney General
120 Broadway
New York, New York 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

## DECISION AND ORDER

### I.     Introduction

          Petitioner Kevin Martin is a New York State prison inmate as a

result of a 1986 conviction in Westchester County Court of first degree

rape and related charges, and of a 2000 conviction in Westchester

County Court of attempted fifth degree criminal possession of a

controlled substance. Martin seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254 and challenges the loss of good time credit based upon

his failure to complete a sex offender treatment program. *See* Dkt. No. 1,

at 4-12.  Martin has raised the following grounds for relief: (1) the state

court erred when it found that the New York State Department of

Corrections ("DOCS") properly recommended that he participate in a sex

offender counseling program ("SOCP"), and the subsequent withholding

of good time credits for not completing the program was therefore

erroneous; (2) the standardized SOCP program violated the ex post facto

clause; (3) claims raised in his second Article 78 petition should not have

been deemed barred by the doctrine of res judicada; and (4) DOCS could

not withhold good time credits because he earned three Earned Eligibility

Certificates ("EEC"), which created a presumption of release.  Dkt. No. 1

at 5-6, Dkt. No. 15, Traverse, at 2-15.  For the reasons that follow, the

petition is **DENIED** and **DISMISSED**.

## II.   Background

### A.  Facts and State Procedural History

On May 27, 1986, Petitioner was convicted following a non-jury trial in Westchester County Court of first degree rape, second degree burglary and second degree assault was sentenced to serve an indeterminate term of ten to twenty years in prison.  *See* Dkt. No. 11, Ex. C at ¶ 3; Ex. M at 1-2; Ex. F, attached "Exhibit I." *See People v. Martin*, 141 A.D.2d 856 (2d Dep't. 1988).  Petitioner participated in and completed a sex offender counseling program in 1993 at the Groveland Correctional Facility.  Dkt. No. 11, Ex. B at ¶ 15, 19 at Ex. C, ¶ 3. Petitioner was conditionally released on parole on December 18, 1998. *Id.* at Ex. C at ¶ 4; Ex. M at 1; Ex. O at ¶ 5.

On January 20, 1999, Petitioner was arrested on new charges.  As a result, his parole was declared delinquent on January 30, 1999.  Dkt. No. 11, Ex. O at ¶5.  At that time, six years, six months and twenty days remained on the 1986 rape sentence.  Dkt. No. 11, Ex. O at ¶ 11. Petitioner eventually pleaded guilty to attempted fifth degree criminal possession of a controlled substance and, on March 9, 2000, was sentenced as a predicate felon to serve one and one-half to three years

in prison.  Dkt. No. 11, Ex. B at ¶¶ 8- 9; Ex. M at 1-2; Ex. F, attached

"Exhibit I."  By operation of New York Law, the sentence ran

consecutively to the 1986 sentence. *See* Dkt. No. 11, Ex. O at ¶¶ 11-13;

N.Y. PENAL LAW §70.25 (2-a).  The Department of Corrections (DOCS)

calculated Petitioner's aggregate sentence to be nine years, six months

and twenty days, with a maximum expiration date of August 30, 2009.

Dkt. No. 11, Ex. M at 1; Ex. O at ¶¶ 11-13. *See* N.Y. PENAL LAW §

70.30(1)(b).

In July 2005, DOCS determined that Petitioner was an appropriate

candidate for participation in the Sex Offender Counseling Program

("SOCP"). Dkt. No. 11, Ex. B at ¶ 13. Petitioner filed a grievance in which

he opposed participation in the SOCP.  Dkt. No. 11, Ex. B at ¶ 14; Ex. F,

attached "Exhibit A", Inmate Grievance # MO-9003-5. Petitioner argued

that he had already completed a sex offender treatment program in 1993,

he had admitted culpability in the 1986 rape, and he was serving a

unrelated sentence upon his conviction for a drug offense.  Dkt. No. 11,

Ex. B at ¶¶15-20; Ex. F at 1-2.  Petitioner also argued that requiring him

to participate in the SOCP a second time was unfair and violated his right

against double jeopardy.  *Id.* at ¶ 21. Petitioner further argued that he

had earned the right to be closer to his family and that if he had to

complete the SOCP again, he should not be transferred to an upstate

facility to do so.  Dkt. No. 11, Ex. C at ¶¶ 7-13; Ex. F at attached "Exhibit

A."

In a memorandum from Petitioner to his corrections counselor,

dated July 15, 2005, Petitioner repeated his argument that he should not

have to participate in the SOCP because he had already done so, but he

stated that after "deep consideration, [he] realized the benefit in what this

program" could mean to him.  Dkt. No. 11, Ex. F, attached "Exhibit L."

Petitioner stated that if he could be transferred to Woodbourne

Correctional Facility, he would complete the SOCP program there.  *Id.*

An investigation of Petitioner's grievance was conducted, and the

Inmate Grievance Review Committee recommended denying the

grievance regarding participation in the SOCP.[1]  In a September 2, 2004

memorandum, a DOCS official stated that there was a "fairly common

misconception regarding sex offender counseling programming that

needs clarification." Dkt. No. 11, Ex. F, attached "Exhibit B." The official

---

[1]        The portion of the grievance addressed to the issue of whether Petitioner
should be permitted to take the SOCP at Woodbourne Correctional Facility was "neither
accepted nor denied because such matters are coordinated by Classification and
Movement." Dkt. No. 11, Ex. H, at 2 n. 1.  See also Dkt. No. 11, Ex. F, attached "Exhibit D."

explained that "[s]ex offender counseling programs that inmates participated in prior to June 2000, and before the establishment of the standardized curriculum, do not satisfy the sex offender counseling need" because the prior programs were "designed and functioned as pre-counseling, educational programs" and their purpose was to prepare inmates for participation in a "recognized sex offender counseling program." *Id.*

Petitioner appealed the denial of his grievance to the Superintendent. Dkt. No. 11, Ex. F, attached "Exhibit C." On August 8, 2005, the Superintendent upheld the decision on the Inmate Grievance Review Committee.  Dkt. No. 11, Ex. F, attached "Exhibit D."

Petitioner appealed further to the Central Office Review Committee, which upheld the Superintendent's determination.  Dkt. No. 11, Ex. F, attached "Exhibit F" and "Exhibit G."

Petitioner commenced an Article 78 proceeding in Supreme Court, Albany County in which he raised the same claims set forth in his Inmate Grievance.  Dkt. No. 11, Exs. A-C.  Petitioner further argued that being forced to participate in the SOCP violated his right to due process and equal protection.  Dkt. No. 11, Ex. B at ¶ 15.  Respondent opposed,

arguing that DOCS's decision that Petitioner was required to participate in the SOCP was rational because it was based upon review of Petitioner's institutional file, any program Petitioner completed before June 2000 did not satisfy the need for sex offender counseling, Petitioner re-offended a short time after release to parole supervision, and the delay between Petitioner's re-incarceration and DOCS's determination that he participate in SOCP was not inappropriate. Dkt. No. 11, Ex. F at 3-6. The respondent also argued that courts do not have authority to order an inmate's incarceration at any particular facility. *Id.* at 6.

On or about October 28, 2005, Petitioner filed a response in which he argued that he was not eligible for the SOCP program under DOCS's own regulations. Dkt. No. 11, Ex. G at 2-3. Specifically, Petitioner argued that he did not qualify as a sex offender because he was not incarcerated as a sex offender, his current crime was not a sex offense, nor did he attempt to commit a sex crime during the commission of his current crime, and he did not commit a sex offense while incarcerated. *Id.* at 2-4; Dkt. No. 15 at 5-6 and Ex. 1. He further argued that the new SOCP program constituted a new "rule" which was made retroactively applicable to him. *Id.* at 3-4. Petitioner claimed he signed a SOCP

treatment form under duress because if he refused to sign, he would lost good time credits.  *Id.* at 6. He also protested DOCS's refusal to transfer him to Woodbourne Correctional Facility.  *Id.* at 5-6.

On September 6, 2005, while his first Article 78 proceeding was pending, Petitioner was transferred from the Mid-Orange Correctional Facility to the Oneida Correctional Facility, so that he could participate in the SOCP program.  Dkt. No. 11, Ex. N at ¶ 10.  Petitioner was transferred to Oneida Correctional Facility because his conditional release date was June 23, 2006, Oneida had a 105-bed capacity, and Petitioner would not experience a delay in starting and completing the program before his conditional release date.  *Id.* at ¶ 7.  In contrast, the program at Woodbourne Correctional Facility, requested by Petitioner, was a much smaller program in which up to nineteen inmates begin the program as a group, and the facility ran approximately two groups every fifteen months.  *Id.* at ¶ 8.

On October 8, 2005, Petitioner executed a referral/consent form agreeing to participate in the SOCP, but claimed he was doing so under duress because he was not incarcerated for a sex crime.  Dkt. No. 11, Ex. N at ¶ 10.  Petitioner also noted he had commenced an Article 78

8

proceeding challenging the requirement that he participate in the SOCP. *Id.* He began the SOCP program on November 7, 2005. *Id.* at ¶ 12. On November 21, 2005, Petitioner completed a Life and Sexual Autobiography form. Dkt. No. 11, Ex. N, at attached Exhibit A.

On November 28, 2005, Petitioner was issued a counseling notification advising him that he should not refer to sexually offending behavior as "sexual intercourse" because doing so implied a consensual act. Dkt. No. 11, Ex. N at ¶ 12. He was advised to be clear that his behavior involved an "act of force," and the failure to do so could result in his removal from the program. *Id.* Petitioner received an average rating in his first evaluation, completed on December 8, 2005, and his counselor noted that he was having some difficulty adjusting to the program because he did not feel that he needed treatment. *Id.* On January 6, 2006, Petitioner completed an "instant offense outline" late. On January 9, 2006, Petitioner was found "not amenable to counseling." *Id.* at ¶ 13.

In a decision dated January 5, 2006, Acting Supreme Court Justice Thomas J. McNamara denied Petitioner's first Article 78 petition. Dkt. No. 11, Ex. H. Judge McNamara found that DOCS's decision to deny

9

Petitioner's grievance was not "arbitrary, capricious or affected by error of law" because Petitioner's return to prison was due in part to the 1986 rape conviction and the program Petitioner previously completed "differed substantially" from the new SOCP program.  *Id.* at 3. Petitioner filed a notice of appeal of that decision.

On January 22, 2006, Petitioner's second Sex Offender Counseling Program Monthly Evaluation was completed. Dkt. No. 11, Ex. N at ¶ 14. The evaluation indicated that Petitioner was performing below average in certain areas of the program and Petitioner was advised that he "failed to admit his offending behavior" because he admitted only to "infidelity and hitting his victim" and suggested that the victim made up the rape complaint to exact revenge against him.  *Id.*  In an inmate counseling notification dated January 23, 2006, Petitioner was given an opportunity to re-write the instant offense outline, and was given specific instructions to admit to and take responsibility for his sexually offending behavior.  *Id.* at ¶ 15. Petitioner was advised that his failure to do so would result in discharge from the program.  *Id.*

Petitioner re-submitted the instant offense outline on January 26, 2006.  Dkt. No. 11, Ex. N at ¶ 16.  Petitioner again described his behavior

as "sexual intercourse" and explained that he assaulted the victim after

an argument about his infidelity. *Id.* On the same day, the counselor in

charge of the Oneida Sex Offender Counseling Program completed a

"Request for Program Removal" form, and Petitioner was removed from

the program based upon his failure to accept responsibility for his

sexually offending behavior and his demonstrated failure to progress in

the program. *Id.* at ¶ 17.

On February 16, 2006, following a hearing, the Oneida Time

Allowance Committee recommended that Petitioner's available good time

credits be withheld, and that decision was affirmed by the Director of

Special Housing/Inmate Discipline on February 28, 2006. Dkt. No. 11,

Ex. N at ¶ 18; Dkt. No. 15 at 4, ¶ 11. Petitioner was advised that once

completed the SOCP, he could apply for reconsideration of that decision.

*Id.*

On or about March 5, 2006, Petitioner filed a second Article 78

petition challenging the loss of good time credit. Dkt. No. 11, Ex. J. In

addition to reiterating the arguments raised in his first Article 78 petition,

Petitioner argued that he was awarded Earned Eligibility Certificates on

May 2, 2001, May 27, 2003 and June 3, 2005 for successfully completing

programs, and that these certificates created a presumption of release. *Id.* at 3-4.  Petitioner argued that he was forced to participate in the SOCP and was then unlawfully discharged from the program.  He further argued that withholding good time credit for failing to participate in a program that had no bearing on his current crime violated his rights to due process and equal protection.  *Id.* at 4-5. Finally, Petitioner argued that New York Corrections Law § 805 created a constitutionally protected liberty interest and he was entitled to be released after he completed his minimum sentence.  *Id.*

Respondent opposed the Article 78 petition.  Dkt. No. 11, Exs. L, M.  Respondent argued that since Petitioner's claims regarding the propriety of his initial placement in the SOCP and his transfer to Oneida Correctional Facility were previously determined on the merits by Judge McNamara in a prior Article 78 proceeding, review of these claims was barred.  *Id.* at Ex. M, 2-4.  Respondent further argued that Judge McNamara's decision denying these claims was correctly decided because (1) Petitioner sentence on the drug charge and the remaining time on his sentence for the rape charge merged as one aggregate sentence by operation of law and that, accordingly, Petitioner was

serving a sentence for a sex offense and was properly deemed a sex offender; and (2) Petitioner had no right to select the facility in which he would be housed.  *Id.* at 3-4. Respondent further argued that Petitioner was properly removed from the SOCP and the denial of good time credit was not arbitrary or capricious.  *Id.* at 5-9.

In a Memorandum and Judgment dated August 9, 2006, Acting Supreme Court Justice Dan Lamont denied Petitioner's second Article 78 petition.  Dkt. No. 11, Ex. P. Judge Lamont held that Petitioner's challenges to his enrollment in the SOCP and his transfer to Oneida Correctional Facility were previously litigated in his first Article 78 proceeding, and review of those claims was barred by the doctrine of res judicada.  Judge Lamont found that Petitioner had a full opportunity to challenge DOCS's actions in the previous proceeding and Judge McNamara clearly addressed these issues.  *Id.* at 3-4.  Judge Lamont also held that the withholding of good time credits was not arbitrary or capricious because (1) Petitioner's current incarceration was "both drug and sex offense related," *id.* at 4 (emphasis in original); and (2) the denial of good time credits was based upon Petitioner's failure to successfully complete the SOCP.  *Id.* at 4-5. Finally, Judge Lamont explained that

13

Petitioner's earned eligibility certificates were relevant only in determining whether an inmate should be granted parole and were irrelevant to the issue of good time. *Id.* at 5.

Petitioner appealed the denial of his second Article 78 petition, and it was consolidated with the appeal of the denial of his first Article 78 petition. He raised five grounds for relief: (1) whether the respondent could withhold good time credits after Petitioner earned three certificates of earned eligibility; (2) whether the respondent could implement an ex post facto law and apply it retroactively to him; (3) whether the respondent had to follow its own SOCP manual when recommending inmates for participation in the SOCP; (4) whether Petitioner committed any crime of sexual misconduct underlying the instant drug offense and, if not, whether he could be recommended for placement in the SOCP; and (5) whether the respondent's SOCP manual was controlling. Dkt. No. 11, Ex. Q, at 11-25. Respondent opposed. *Id.* at Ex. R.

In a decision dated November 8, 2007, the Appellate Division, Third Department, affirmed. Dkt. No. 11, Ex. S. The court found that DOCS properly recommended that Petitioner participate in the SOCP because, since he was serving the unexpired portion of the sentence on his rape

14

conviction, he was serving a sentence for a sexual offense.  The court

also held that DOCS rationally determined that the earlier sex offender

course Petitioner completed was "not as comprehensive as, and did not

satisfy the counseling and treatment objectives of, the standardized

programs now in existence[.]"  *Id.* at 2-3 (citations omitted). The court

further found that DOCS's standardization of programs and the resulting

policy change did not violate the ex post facto clauses of either the state

or federal constitutions.  *Id.* at 3. The court held that DOCS did not act

arbitrarily or capriciously in requiring Petitioner to participate in the SOCP

or by withholding Petitioner's good time credits because (1) his

termination from the program was based on poor evaluations of

Petitioner's attitude and his failure to take full responsibility for his

offending behavior; and (2) termination from a recommended or required

sex offender treatment program provides a rational basis for withholding

good time credit. *Id.*  Finally, the Appellate Division stated that since

earned eligibility certificates are applicable to parole, and not to good

time credit, Petitioner's claim that DOCS could not withhold good time

credit after issuing the certificates was "inapposite."  *Id.*

On November 19, 2007, Petitioner filed a Notice of Appeal in the

New York Court of Appeals in which he stated, "this appeal is by right, to

inquiry [sic] whether a substantial constitutional question is directly

involved to support an appeal as of right [.]".  Dkt. No. 11, Ex. T.  The

Court of Appeals made a sua sponte inquiry on or about December 7,

2007 into whether the court had subject matter jurisdiction over

Petitioner's case.  *See* Dkt. No. 11, Ex. U at 1. In response to that

inquiry, Respondent argued that the appeal should be dismissed for lack

of "sufficient jurisdictional predicate under C.P.L.R. 5601(b)."  *Id.*

Respondent explained that the appeal, based upon Petitioner's argument

that DOCS's actions did not have a rational basis because he was

referred to and discharged from the SOCP in contravention of DOCS's

own policies, did not raise a substantial constitutional question.  *Id.* at 1-

2. In an Order dated February 19, 2008, the Court of Appeals dismissed

Petitioner's appeal sua sponte on the ground that "no substantial

constitutional question is directly involved."  Dkt. No. 11, Ex. V.[2]

---

[2]        On or about September 26, 2008, Petitioner filed motion for reconsideration of the Appellate Division's November 8, 2007 decision based upon a change in the law. Dkt. No. 11, Ex. W. Petitioner argued that pursuant to a decision rendered in *Matter of Gill v. Greene*, 48 A.D.3d 1003 (3d Dep't 2008), DOCS lacked authority to order that his sentences for the rape charge and the drug charge run consecutively.  *Id.* at 2. Respondent opposed, arguing that Petitioner did not previously argue to the Appellate Division that his sentences should not run consecutively. Dkt. No. 11, Ex. X, at 2-5. Respondent also pointed out that an appeal was pending in *Matter of Gill*.  *Id.* There is no indication in the record before this Court of whether the Appellate Division ruled on Petitioner's motion.  It is worth noting that the Court of Appeals reversed the Third

**C.  Proceedings in This Court**

Petitioner filed his petition for a writ of habeas corpus on July 14,

2008. Dkt. No. 1. On December 19, 2008, the Office of the Attorney

General for the State of New York, acting on Respondent's behalf, filed a

response and memorandum of law in opposition to the petition, along

with the relevant state court records. *See* Dkt. Nos. 9-11. Petitioner filed

a Traverse on January 8, 2009.  Dkt. No. 15.

**III.    The Petition**

**A.  Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), a federal court may grant habeas corpus relief with respect to

a claim adjudicated on the merits in state court only if the adjudication of

the claim: (1) was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of

the United States; or (2) was based on an unreasonable determination of

---

Department's decision in *Matter of Gill*. In *People ex rel Gill v. Greene*, 12 N.Y.3d 1, 4
(2009), the court held that when a court is required by statute to impose a sentence that is
consecutive to another, and the court does not say whether the sentence is consecutive or
concurrent, it is deemed to have imposed the consecutive sentence the law requires. *Gill*,
12 N.Y.3d at 4 (citing N.Y. Penal Law §70.25(2-a)), *petition for cert. filed* May 12, 2009.

the facts in light of the evidence presented in the State court proceeding.[3]

*Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)(citing 28 U.S.C.

§§2254(d)(1), (2)); *Hawkins v. Costello,* 460 F.3d 238, 242-43 (2d Cir.

2006), *cert. denied* 549 U.S. 1215 (2007).

A state court decision violates the "contrary to" clause of section

2254(d)(1) when it "reaches a result opposite to the one reached by the

Supreme Court on the same question of law or arrives at a result

opposite to the one reached by the Supreme Court on a 'materially

indistinguishable' set of facts." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir.

2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). A

federal habeas court may only grant the writ under the "unreasonable

application" clause of the section when the state court's decision

"identifies the correct rule of law but applies that principle to the facts of

the petitioner's case in an unreasonable way." *Id.* at 74 (citing *Williams*,

529 U.S. at 413). "The question under AEDPA is not whether a federal

court believes the state court's determination was incorrect but whether

that determination was unreasonable - a substantially higher threshold."

---

[3]    "Clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller,* 537 F.3d 102, 106 (2d Cir. 2008) (citing *Williams v. Taylor,* 529 U.S. 362,  412 (2000)).

*Schriro,* 550 U.S. at  473. Federal habeas courts are also required under AEDPA "to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " *Id.* (citing § 2254(e)(1)).

## B.  Exhaustion

Respondent argues that Martin's claims are unexhausted and procedurally defaulted because although he sought leave to appeal the Appellate Division's decision affirming the denial of his Article 78 petitions as of right in the New York Court of Appeals, he did not also seek permission for leave to appeal pursuant to C.P.L.R. § 5513(b) once his appeal as of right was dismissed. Resp't Mem. at 14-17, 19.

An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court unless there is an "absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b).  To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive

exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995*); Fama v. Comm'r. of Corr. Servcs*., 235 F.3d 804, 808 (2d Cir. 2000). Finally, the petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of petitioner's claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir.1985); *Barton v. Fillion*, No. 03-CV-1377, 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007)(Hurd, J., adopting Report-Rec of DiBianco, M.J.). A claim is deemed exhausted when no real avenue remains by which it could be raised.  *See Bossett,* 41 F.3d at 828.

In this case, Petitioner attempted to appeal as of right in the New York Court of Appeals.[4] *See* Dkt. No. 11, Ex. T, Notice of Appeal (citing

---

[4]      Under New York law, an appeal may be taken as of right from an order of the Appellate Division in civil actions only if: (1) there is a dissent by at least two justices on a question of law in the appellant's favor; (2) the order finally determines an action where the construction of the state or United States constitution is directly involved, or finally determines the validity of a statutory provision of the state or United States under the state or United States constitutions; (3) the order grants or affirms the grant of a new trial or hearing where the "appellant stipulates that, upon affirmance, judgment absolute shall be entered against him"; or (4) the appeal is from a nonfinal determination of the Appellate Division.  N.Y. C.P.L.R. § 5601(a)-(d). In all other cases, a litigant must seek permission for leave to appeal to the New York Court of Appeals. N.Y. C.P.L.R. § 5513.

N.Y. C.P.L.R. § 5601(b)(1)); Statement Pursuant to Section 500.2 of the

Rules of the Court of Appeals, at ¶ 5 (citing section 5601(a) and

5601(b)(1)). Leave to appeal was dismissed sua sponte by the Court of

Appeals because "no substantial constitutional question is directly

involved."  Dkt. No. 11, Ex. V. There is nothing in the Court of Appeals's

decision to suggest that it treated Petitioner's attempt to appeal as of

right as an application for permission to appeal. *See, e.g.*, *Lord v. Atty.*

*Gen.*, No. 84 Civ. 1116E, 1991 WL 5174, at * 2 (W.D.N.Y. Jan 11,

1991)(rejecting argument that the Appellate Division treated a petitioner's

notice of appeal as a request for leave to appeal because the court's

reference to  "CPL § 450.10 (appeal as of right) and § 450.15 (appeal by

permission) make it clear that the Court's reason for not accepting the

appeal was that the petitioner had not requested a certificate granting

leave to appeal[.]"), *aff'd* 940 F.2d 650 (2d Cir. 1991), *cert denied* 502

U.S. 1007 (1991).

Petitioner moved for reargument in the Court of Appeals, and

asked the court "reverse its prior order, and grant this application for

leave to reargue and reconsideration of the aforementioned motion for

jurisdiction statement and for such other and further relief as this court

may deem just and proper." *Id.;* Dkt. No. 15, Traverse, Ex. 4. The motion was denied May 1, 2008. *Id.* at Ex. 6.

As Respondent points out, it does not appear that Petitioner then sought permission for leave to appeal pursuant to section 5513. Respondent cites no case law authority - and this Court has found none - to support the argument that if Petitioner's attempt to appeal as of right is denied in an Article 78 proceeding, he must then seek leave to appeal in order to exhaust his claims for purposes of habeas review.[5] However, petitioners are required to use the proper procedural vehicle so that the state court may pass on the merits of the presented claims. *See Dean*, 753 F.2d at 241. If Respondent's argument is correct, Petitioner may have used the wrong procedural vehicle to present his claims to the Court of Appeals.

Assuming Petitioner was required to seek leave to appeal after his attempt to appeal as of right was dismissed, he had to do so within thirty days of the denial of his motion to reconsider. *See* N.Y. C.P.L.R. §§ 5513(b); 5514(a)("If an appeal is taken or a motion for permission to

---

[5]        There are state cases in which litigants attempted to appeal as of right and also requested leave to appeal. *See, e.g., Scott v. Manilla*, 78 N.Y.2d 995 (1991); *Matter of Shannon B.*, 70 N.Y.2d 458, 462 (1987); *Yalkowski v. Shedler*, 60 N.Y.2d 700 (1983)(appeal as of right dismissed, leave to appeal denied). This Court's research found no such cases in the context of an Article 78 proceeding.

appeal is made and such appeal is dismissed or motion is denied and,

except for time limitations in section 5513, some other method of taking

an appeal or of seeking permission to appeal is available, the time limited

for such other method shall be computed from the dismissal or denial

unless the court to which the appeal is sought to be taken orders

otherwise."). It would be futile for Petitioner to attempt to seek leave now,

since the thirty days within which to do so has expired. Since there is an

absence of available state court process, Petitioner's claims may be

deemed exhausted, but they are procedurally barred.  *See Bossett,* 41

F.3d at 828.

These claims may be reviewed only if Petitioner demonstrated

either (1) good cause for the default and actual resulting prejudice; or (2)

that the denial of habeas relief would leave unremedied a "fundamental

miscarriage of justice," *i.e.*, that he is actually innocent. *Calderon v.*

*Thompson*, 523 U.S. 538, 559 (1998); *Coleman v. Thompson*, 501 U.S.

722, 748-750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Fama*,

235 F.3d at 809. If a petitioner fails to establish cause, a court need not

decide whether he suffered actual prejudice, because federal habeas

relief is generally unavailable as to procedurally defaulted claims unless

both cause and prejudice are demonstrated. *Murray*, 477 U.S. at 496; *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Here, Petitioner has not alleged any facts to establish cause for failing to seek leave to appeal in the Court of Appeals once his attempt to appeal as of right was dismissed. Thus, the Court need not determine whether Petitioner suffered prejudice. *Stepney,* 760 F.2d at 45; *Staley v. Greiner*, No. 01-CV-6165, 2003 WL 470568, at *7 (S.N.D.Y. Feb. 6, 2003)(*citing Stepney*). Petitioner has also failed to offer any evidence to show actual innocence. *Spence* v. *Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000).  Petitioner's claim is therefore procedurally barred.

In the alternative, Petitioner's claims are without merit.

## C.    The Merits

"Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of ... physical confinement, and thus lies at the core of habeas corpus." *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal citations and quotation marks omitted). The loss of good time credits is "equivalent to a loss of a 'shortened prison sentence' " and is subject to

24

the procedural due process safeguards afforded under the Fourteenth

Amendment. *Torres v. Burge*, No. 01-CV-1337, 2007 WL 625982, at \*4

(N.D.N.Y. Feb. 23, 2007)(Sharpe, J., adopting Report - Rec. of Bianchini,

M.J.)(quoting *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974)). *See*

*Hinebaugh v. Wiley*, 137 F. Supp. 2d 69, 76 (N.D.N.Y. 2001) (Kahn,

J.)(citing *Wolff*).

Here, however, Petitioner is not raising a procedural due process

claim because he does not contest that a hearing was held before the

Time Allowance Committee, nor does he challenge the process by which

good time credits were withheld. *See* Dkt. No. 11, Ex. N, at ¶ 18; Dkt. No.

15, at 4, ¶ 11. Instead, Petitioner argues that he should not have been

required to participate in the SOCP program. Petitioner argues that he

was not a sex offender within the meaning of the DOCS SOCP manual

because he was serving a sentence for attempted drug possession and

not for a sex offense, he did not commit or attempt to commit a sex

offense in the course of committing the drug offense, and he did not

commit a sex offense while incarcerated. Dkt. No. 1, at 5; Dkt. No. 15, at

2-5 (citing Ex. 1, SOCP manual, at 10). Petitioner further argues that the

25

TAC's decision to withhold good time credits for failing to complete the SOCP was therefore erroneous and arbitrary. *Id.*

To the extent that Petitioner's argument is based upon an alleged misinterpretation or misapplication by DOCS of its own manual, or by the state courts of state law, it is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) (additional citation omitted); *Hameed v. Jones*, 750 F.2d 154, 160 (2d Cir. 1984), *cert. denied*, 471 U.S. 1136 (1985).

To the extent that Petitioner is attempting to assert a substantive due process claim under the Fourteenth Amendment, it is without merit. First, the Appellate Division held that DOCS properly recommended that Petitioner participate in the SOCP because (1) he was serving the unexpired portion of his rape sentence and was therefore serving a sentence for a sexual offense; and (2) although he participated in a prior sex offender treatment course, it was not as comprehensive as the new standardized programs. Dkt. No. 11, Ex. S, at 2-3. Those findings are

26

supported by the record.

In 1986, Petitioner was sentenced to serve ten to twenty years in prison following his conviction for first degree rape.  Dkt. No. 11, Ex. M at 1; Ex. S at 2. Petitioner was conditionally released to parole supervision on December 18, 1998, and less than one month later was arrested on new charges.  Dkt. No. 11, Ex. O at ¶ 5.  Petitioner's parole was declared delinquent on January 30, 1999, and at that time six years, six months and twenty days remained on Petitioner's rape sentence.  *Id.* at ¶ 11. By operation of New York State law, the one and one-half to three-year sentence imposed on Petitioner's new drug charge ran consecutively to this unexpired sentence.  N.Y. PENAL LAW § 70.25 (2-a)(stating that when an indeterminate sentence of imprisonment is imposed and a "person is subject to an undischarged indeterminate or determinate sentence of imprisonment imposed prior to the date on which the present crime was committed, the court must impose a sentence to run consecutively with respect to such undischarged sentence.").  Thus, as the Appellate Division found, Petitioner was serving the remainder of his unexpired sentence for the rape conviction when DOCS recommended that he complete the SOCP program.

27

The Appellate Division's finding that DOCS's decision that

Petitioner complete the SOCP program even though he had completed a

sex offender treatment program in the past was rational is also supported

by the record.  There "is a rational connection between the SOCP,

including its requirement that prisoners take responsibility for their crimes

or face the loss of good time credits for non-participation, and DOCS'

interest in rehabilitating prisoners." *Bush v. Goord*, No. 03-CV-759S,

2009 WL 790358, at *4 (W.D.N.Y. Mar. 25, 2009)(civil rights context).

DOCS officials explained that the programs in existence prior to June

2000, before the standardized curriculum was instituted, did not "satisfy

the sex offender counseling need."  Dkt. No. 11, Ex. F, attached "Exhibit

B."  Rather, those programs functioned as pre-counseling educational

programs with the intended purpose of preparing "individuals for

participation in a recognized sex offender counseling program." *Id. See*

*Tucker v. Nuttal*, 31 A.D.3d 1078, 1078 (3d Dep't 2006) (determination

that "petitioner's 1997 participation in the mandatory sex offender

program at Oneida Correctional Facility in Oneida County did not obviate

the need for him to complete the sex offender program at Mid-State, had

a rational basis in that the prior program was not as comprehensive as

the current one, nor did it constitute treatment in the manner that the current one does."). While Petitioner may not "agree with the necessity to complete the SOCP, 'it is not the function of this court to micromanage the New York prison system or to second guess officials, including those regarding programming.' " *Bush,* 2009 WL 790358, at *6 (quoting *Sumpter v. Skiff*, No. 05-CV-868, 2008 WL 4518996, *12 (N.D.N.Y. 2008)(McAvoy, J. adopting Report-Rec. of Peebles, M.J.).

Petitioner's claim that good time credits should not have been withheld for failing to complete the SOCP is also without merit.  Good behavior allowances are a privilege to be earned by inmates and "no inmate has the right to demand or to require that any good behavior allowance be granted to him." N.Y. COMP. CODES R. & REGS. tit. 7, § 260.2. *See also* N.Y. CORRECT. § 803(4) ("No person shall have the right to demand or require the allowances authorized by this section."); *Edwards v. Ladlair*, No. 07-CV-00059, 2008 WL 3156214, *6 (N.D.N.Y. 2008)(Singleton, J.)("the right to a good time allowance is a discretionary privilege.").  Good behavior allowances may be granted for, among other things, "progress and achievement in an assigned treatment program[.]" N.Y. CORRECT. § 803(1)(a). They are, however, "contingent on the

inmate's continued good behavior, efficient and willing performance of duties assigned, and progress and achievement in an assigned treatment program." N.Y. COMP. CODES R. & REGS tit. 7, § 262.1(d).  Thus, good time credits may be withheld if an inmate fails to perform properly in assigned programs. N.Y. CORRECT. § 803 (1)(a). This "wholly discretionary good time allowance scheme does not 'create a legitimate expectancy' of obtaining an earlier release." *Edwards*, 2008 WL 3156214, at *4 (citing *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001).

In this case, the Appellate Division found that Petitioner's termination from the SOCP was based upon poor evaluations "linked to petitioner's negative attitude and his failure or refusal to take full responsibility for his offending behavior." Dkt. No. 11, Ex. S at 3. The court explained that termination from a recommended or required sex offender treatment program provided a rational basis for withholding good time credit because it represented "a refusal to address the behavior that resulted in incarceration."  *Id.* at 3. The record shows that Petitioner did not comply with the requirements of the SOCP program because, despite admonishments to stop doing so, he continuously described his sexually offending conduct as "sexual intercourse" and

implied the victim fabricated the rape in order to retaliate against him for

his infidelity.  Dkt. No. 11, Ex. N at ¶¶ 12-17.  In light of the foregoing,

and based upon the record, the Court cannot conclude that the Appellate

Division's decision was contrary to or an unreasonable application of

clearly established Supreme Court precedent.[6]

Petitioner's claim that the standardized SOCP constitutes an ex

post facto law is also without merit. The Ex Post Facto Clause (U.S.

CONST. art. I, § 10) prohibits laws which retroactively make "innocent acts

criminal," or increase available punishments for criminal acts.  *Collins v.*

*Youngblood*, 497 U.S. 37, 46 (1990).  The Ex Post Facto Clause is

designed to protect the right to fair notice.  *Weaver v. Graham*, 450 U.S.

24, 30 (1981).

The fact that Petitioner challenges a DOCS regulation rather than a

---

[6]    The Court is not unmindful of the unpublished decision in *Donhauser v.*
*Goord*, 181 Fed. Appx. 11 (2d Cir. 2006), a civil rights action under 42 U.S.C. § 1983, in
which the Second Circuit remanded the case to the district court for clarification, apparently
agreeing, sub silentio, that the allegation DOCS automatically denied good time credits as a
direct result of a prisoner's refusal to participate in the sex offenders' counseling program
gave rise to a viable claim under the Fifth Amendment. This does not, however, change the
analysis in this case-in a § 2254 action, the Court is concerned with the law as established
by the Supreme Court, not the Court of Appeals for the Second Circuit. This Court is,
however, bound by decisions of the Second Circuit as to whether the answer to a particular
issue has been clearly established by the Supreme Court. That is not present in this case.
Moreover, Petitioner makes no claim that participation in the SOCP violated his Fifth
Amendment rights, and it is clear that Petitioner did not lose good time credits automatically
for refusing to participate in the SOCP, but, rather for unsatisfactory performance in the
program.

legislative enactment does not affect the analysis under the Ex Post

Facto Clause. *See Garner v. Jones*, 529 U.S. 244, 250 (2000)

(suggesting that a parole board rule could be an ex post facto law if it

created a significant risk of increasing punishment). The Supreme Court

has suggested that a law may violate the ex post facto clause if it alters

punitive conditions but not the length of confinement. *See Weaver,* 450

U.S. at 35-36 (statute that reduced the amount of good time credit

automatically available solely for good conduct violated the ex post facto

clause as applied to prisoner whose crime was committed before its

effective date because it constricted the inmate's ability to earn early

release); *In re Medley*, 134 U.S. 160, 173 (1890) (holding that a statute

retroactively requiring solitary confinement for capital offenses and

prohibiting a defendant sentenced to death from knowing the date of

execution was invalid under the Ex Post Facto Clause). "But, because

the Ex Post Facto Clause should not be employed for the

micromanagement of an endless array of legislative adjustments to

parole and sentencing procedures, it is unlikely that a law regulating only

the conditions of confinement will be of such a degree to violate the Ex

Post Facto Clause." *Levine v. Menifee*, No. 05 Civ. 1902, 2005 WL

1384021 at *8 (S.D.N.Y. Jun. 9, 2005)(quoting *Garner,* 529 U.S. at 252)

(quoting *Calif. Dept. of Corr. v. Morales*, 514 U.S. 499, 508 (1995)

(internal quotation marks omitted).

In this case, the standardized SOCP program was not designed to

punish inmates for acts previously committed that were innocent when

performed, nor was it designed to enhance punishment for crimes after

their commission. The program is designed to satisfy a counseling need

for sex offenders, a goal legitimately related to rehabilitation. *McClune v.*

*Lile*, 536 U.S. 24, 68 (2002); *Scarola v. Goord*, 266 A.D.2d 598, 599 (3d

Dep't 1999), *lv. denied* 94 N.Y.2d 760 (2000). Accordingly, the Appellate

Division's decision on this point was not contrary to or an unreasonable

application of clearly established Supreme Court precedent. *See Lee v.*

*Governor of State of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996)(Executive order

and amendment to New York correction law that made certain prisoners

ineligible for participation in temporary release programs, when

previously they would have been eligible only with the discretionary

permission of Commissioner of Corrections, did not violate the ex post

facto clause because it did not retroactively alter the definition of crimes

or increase punishment for criminal acts); *Levine,* 2005 WL 1384021 at

*8-9 (Bureau of Prisons regulation affecting the way in which it exercises discretion in designating facilities as places of imprisonment did not subject petitioner to increased punishment for his crimes).

Petitioner further argues that his second Article 78 petition should not have been deemed barred by the doctrine of res judicada because each Article 78 petition involved separate and distinct arguments. *See* Pet. at 6. As the Albany Supreme Court explained in its decision denying Petitioner's second Article 78 petition, his arguments regarding DOCS's requirement that he participate in the SOCP, and its decision to transfer him to a different facility in order for him to do so, were raised and rejected in the first Article 78 petition and an appeal of that decision was pending at the time the court decided the second Article 78 petition. *See* Dkt. No. 11, Ex. P, at 3-4. The Court therefore decided only the issues related to the loss of good time credits. *Id.* at 4-5. In any event, to the extent that this claim asserts a proper ground for habeas relief, Petitioner's appeals of the denial of both Article 78 petitions were consolidated and each claim Petitioner raised was disposed of by the Appellate Division. Any challenge to the lower court's finding of res judicada is therefore inapposite. *See* Dkt. No. 11, Ex. S.

34

Finally, Appellate Division's decision that Earned Eligibility Certificates are applicable to parole but not to good time credit is an interpretation of state law that does not raise a federal constitutional question and, accordingly, is not cognizable on habeas review. Dkt. No. 11, Ex. S, at 3 (citing N.Y. CORRECT. Law §§ 803, 805); *Estelle*, 502 U.S. at 67.

### III.   <u>Certificate of Appealability</u>

For the reasons set forth above, the petition for a writ of habeas corpus filed by Petitioner is **denied and dismissed.**  No certificate of appealability ("COA") shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), <u>cert</u>. <u>denied</u> 531 U.S. 873 (2000). *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (If the denial of a habeas petition is based upon procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has

established a valid constitutional violation.").

**WHEREFORE**, after reviewing Petitioner's submissions and the relevant law, and for the reasons stated herein, it is hereby

**ORDERED,** that Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED in its entirety;** and it is further

**ORDERED**, that no Certificate of Appealability shall issue with regard to any of Petitioner's claims; and it is

**ORDERED,** that the Clerk of the Court shall serve a copy of this Order upon Petitioner and Respondent in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 24, 2009

United States District Court Judge